IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JORDAN VARGAS,**

    **Plaintiff,**

v.                                                                                                                 **1:21-cv-00600-DHU-JHR**

**PUBLIC EDUCATION DEPARTMENT,**
**DIVISION OF VOCATIONAL REHABILITATION;**
**JERMEY GARCIA, ROBERT ALIREZ; AND**
**HOTONA SECTERO,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 20). In her second amended complaint, Ms. Vargas brings Title VII, New Mexico Human Rights Act ("NMHRA"), Fourteenth Amendment, and various common law claims against her former employer, the Business Outreach Specialist of the Division of the Vocational Rehabilitation Center for the State of New Mexico ("DVR"), who now moves to dismiss the complaint. For the reasons set forth below, the motion is DENIED in part and GRANTED in part.

### I. Facts and Procedural Background

Jordan Vargas ("Plaintiff") worked for the Business Outreach Specialist of the DVR from April 23, 2014, until February 28, 2019. Pl.'s Second Amend. Compl. ¶ 7; Doc. 18. Plaintiff alleges that she was forced to resign from her position because of intense harassment and humiliation from her supervisors' investigation into her personal and romantic life. In 2015, Plaintiff was accused of having an inappropriate relationship with Adrian Apodaca ("Apodaca,") the Deputy Director. *Id.* at ¶ 9. This accusation was based on the allegations of Defendant Hotona Secatero ("Secatero.")

1

*Id.* Plaintiff alleges that Defendant DVR used this alleged relationship as pretext to terminate Apodaca. Plaintiff complained to the Field Operations Director but believed nothing was done. *Id.*

After this event, Plaintiff alleges she experienced harassment beginning on November 14, 2018, when legal counsel for DVR made inappropriate remarks about Plaintiff and another female employee. The inappropriate comments about Plaintiff and another female included, but were not limited to, "don't talk too fast, Jordan is blonde," and a comment about a shock collar. Pl.'s Resp. at 2, Doc. 22. On November 26, 2018, Plaintiff complained to the Department of Human Resources ("HR") about the above comments. *Id.* On December 6, 2018, Plaintiff alleges DVR retaliated against her when Defendant Jeremy Garcia ("Garcia"), while acting as an investigator for DVR, interrogated Plaintiff about her relationship with Apodaca. Doc. 18 at ¶ 11. She found this investigation to be degrading, and she experienced "public humiliation and disparagement" every day in her workplace. *Id.* at ¶ 14. Between November 2018 and February 2019, Plaintiff was stripped of her duties, including her removal from the "Jackson Project," which was a prestigious project which functioned as proxy for the Governor's Commission on Disabilities and ADA coordination. *Id.* at ¶ 12. Her employment evaluations were also downgraded. *Id.* at ¶ 16.

Plaintiff contends that these events, in addition to the environment created by what she perceived as a humiliating and degrading investigation into her personal life, demonstrate that she was discriminated against because of her sex and that she was retaliated against for opposing these employment practices in violation of Title VII of the Civil Rights Act of 1964. *Id.* at ¶ 18. Plaintiff alleges seven counts in her amended complaint: (1) retaliatory demotion and discharge under Title VII and NMHRA; (2) wrongful and retaliatory demotion and discharge under New Mexico common law; (3) violation of due process rights; (4) class of one equal protection; (5) defamation and slander; (6) civil conspiracy; and (7) declaratory judgement. Plaintiff is seeking – among other

things – compensatory damages, double back pay, emotional distress damages, punitive damages, litigation and attorney's fees, and a written apology from the Public Education Department ("PED").

On April 13, 2022, Defendants filed a motion to dismiss Plaintiff's second amended complaint. This Court held a hearing on the matter on December 18, 2023. At the hearing, the Court made the following rulings: (1) the motion to dismiss is denied with regards to Defendants' exhaustion argument, (2) the motion is granted with regards to the Title VII claims brought against Defendants in their individual capacities, (3) the motion is granted with regards to the due process claims, (4) the motion is denied as moot with regards to the qualified immunity arguments because Plaintiff conceded that there were no §1983 claims against individuals.

After the hearings, three remaining arguments were taken under advisement by the Court: (1) whether Plaintiff failed to state a claim for retaliatory demotion or discharge pursuant to Title VII or the NMHRA; (2) whether Defendants have immunity from the conspiracy, slander, and common law retaliation claims; and (3) whether Plaintiff's class of one equal protection claim is legally viable.

## II. Legal Standards

Motions filed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) assert that a complaint lacks subject-matter jurisdiction and/or fails to state a claim upon which relief can be granted. Fed. R. Civ. Pro. 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), subject matter jurisdiction "motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to the subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). When a court reviews "a facial attack on the complaint, a district court must accept the allegations

in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (internal citations omitted). A claim may be dismissed under Rule 12(b)(6) if it does not state a "claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating "plausibility" the Court should disregard all conclusory statements of law and consider whether the remaining allegations, when accepted as true, support a reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal,* 556 U.S. at 678.

### III. Analysis

**A. Defendants' motion to dismiss is denied with regards to the argument that Plaintiff has failed to state a claim for retaliatory demotion and discharge.**

In their motion to dismiss, Defendants argue that Plaintiffs constructive discharge and retaliation claims should be dismissed for failure to state a claim. In particular, Defendants argue that to state a claim for retaliation under Title VII, Plaintiff must allege (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the action materially adverse, and (3) that a causal connection existed between the protected activity and the adverse action. *See Khalik v. United Airlines,* 671 F.3d 1188, 1193 (2012). Defendants claim that Plaintiff's allegation in her amended complaint was that she was constructively discharged for her "refusal to dismiss her charge of discrimination filed with the EEOC."[1] According to Defendants, this is not sufficient to plead a constructive discharge claim. Instead, Plaintiff had to plead that she "had no other choice but to quit." *Gormley v. Coca-Cola Enterprises,* 2005-NMSC-003, ¶ 10, 137 N.M. 192, 109 P.3d 280.

Plaintiff argues that her retaliation claim is well-pled. In particular, she points to case law that holds a close temporal proximity can raise an inference that an adverse employment action is

---

[1]Doc. 18 at ¶ 22.

4

related to discriminatory intent. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999). Plaintiff claims that she complained to DVR's HR about the harassment she experienced due to rumors pertaining to Plaintiff's sex-life, rumors she alleges were created by her superiors, and that HR took no action. Doc. 22 at 7. She also claims that after she complained, she was retaliated against by the Chief Investigator[2] for the department, when he contacted her to interview her about "inappropriate relationships." *Id.* As a result she experienced materially adverse employment actions. *Id.*

Defendants are correct that a prima facie case of retaliation has three requirements: that the plaintiff engaged in protected opposition to discrimination, that a reasonable employee would have found the challenged action materially adverse, and that a causal connection existed between the protected activity and the materially adverse action. *See Twigg v. Hawker Beechcraft Corp.,* 659 F.3d 987, 998 (10th Cir.2011). Regarding the materially adverse prong, a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales,* 438 F.3d 1211, 1219 (D.C. Cir. 2006)). When determining a causal relationship, it is well established that "a retaliatory motive may be inferred when an adverse action closely follows protected activity." *Anderson,* 181 F.3d at 1179 (quoting *Chavez v. City of Arvada,* 88 F.3d 861, 866 (10th Cir. 1996). The Tenth Circuit has found that a period of twenty-four days between the protected activity and the employer action can, on its own, demonstrate a causal connection. *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). Courts have clarified that the protected action needs to be temporally *very* closely

---

[2]Plaintiff does not identify this individual by name. *See* Doc. 22.

related to the adverse action. *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) ("the four-month time lag between Conner's participation in protected activity and his termination by itself would not be sufficient to justify an inference of causation.").

In order to plead a claim of retaliatory discharge in particular, a plaintiff must show that "she had 'no other choice but to quit.'" *Yearous v. Niobrara County Memorial Hosp. By and Through Bd. of Trustees,* 128 F.3d 1351, 1356 (10th Cir. 1997) (citing *Woodward v. City of Worland,* 977 F.2d 1392, 1401 (10th Cir. 1992)). A resignation will be involuntary "when the totality of the circumstances indicate the employee did not have the opportunity to make a free choice." *Parker v. Board of Regents of Tulsa Jr. College,* 981 F.2d 1159, 1162 (10th Cir. 1992); *See also Exum v. U.S. Olympic Committee,* 389 F.3d 1130, 1135 (10th Cir. 2004) (a plaintiff "must show that, at the time of [her] resignation, [her] employer did not allow [her] the opportunity to make a free choice regarding [her] employment relationship.") Examples of adverse action that would result in a viable claim of a constructive discharge would include "a humiliating demotion, extreme cut in pay, or transfer to a position in which [the employee] would face unbearable working conditions." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004). An employer's threat of being fired, pressure to resign, or a dramatic pay cut also can serve as the basis for a constructive discharge claim. *See Gormley,* 2005-NMSC-003, ¶ 11; *Goodwin-Haulmark v. Menniger Clinic, Inc.,* 76 F.Supp.2d 1235 (D Kan. 1999); *James v. Sears, Roebuck & Co.,* 21 F.3d 989 (10th Cir. 1994).

A Plaintiff does not need to demonstrate that "the employer's intention was to force the employee to quit: '[T]o the extent that [the employer] denies a conscious design to force [the employee] to resign, we note that an employer's subjective intent is irrelevant; [the employer] must be held to have intended those consequences it could reasonably have foreseen.'" *Ramsey v. City*

*& Cnty. of Denver*, 907 F.2d 1004, 1010 (10th Cir. 1990) (citing *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986).

The Court finds that Ms. Vargas has sufficiently pled her retaliatory discharge claim. Plaintiff has clearly met the first prong of the prima facie test articulated in *Twigg v. Hawker Beechcraft Corp as* she complained to DVR's HR about the discriminatory and derogatory comments made to her. Therefore, she engaged in a protected action. She did experience adverse employment actions: she was interrogated by her supervisors about false allegations, she was stripped of her duties in the Governor's Commission on Disabilities and ADA coordination, her employment evaluations were downgraded, and she alleges that the fraudulent investigation led to public humiliation and disparagement in her workplace. Doc. 20 at 9. Under the standard set forth in *Burlington N. & Santa Fe Ry. Co. v. White,* a reasonable employee would have been dissuaded from making a discrimination complaint if they knew that these actions would be taken against them. These adverse actions occurred in very close proximity to her complaint, beginning in the same month she made her complaint to HR. *See* Def.'s Mot. to Dismiss at 9, Doc. 20. Under *Argo,* this time period alone is enough to give rise to a conclusion of causation. Given that she is also pleading sex discrimination, an investigation into the intimacies of her sex life could also demonstrate causation between her protected action and the adverse action.

Defendants argue that Ms. Vargas has not properly plead her claim of retaliatory discharge because she has not demonstrated that she "had no other choice but to quit." However, at this stage of the legal proceedings, the Court is convinced that Plaintiff has properly pled this claim. Under *Pennsylvania State Police v. Suders,* a humiliating demotion can serve as the basis of a retaliatory demotion and discharge. *See Pennsylvania State Police,* 542 U.S. at 134. She was stripped of her duties in a prestigious position as a result of a public inquiry into her personal life, which she

alleges was humiliating. Following the holding of *Ramsey v. City & Cnty. of Denver,* Ms. Vargas does not have to prove to this Court that DVR made a conscious choice to force her to resign, rather that they intended the foreseeable consequences. *See Ramsey,* 907 F.2d at 1010. Here, Plaintiff alleges employers intended to humiliate her via her demotion and public inquest into her alleged sexual relationship with a male supervisor. It is those intentional actions which Ms. Vargas alleges made her working conditions so untenable that she had no choice but to quit. As this Court must accept the allegations of the complaint as true at this point in the legal proceedings, the Court finds that these allegations are sufficient to sustain her claim of retaliatory demotion. *See Holt*, 46 F.3d at 1002.

**B. Defendants' motion to dismiss is granted with regards to the argument that defendants have immunity from the common law conspiracy, slander, and retaliation claims.**

Defendants claim that they have immunity with regards to Plaintiff's common law conspiracy, slander and defamation and retaliation claims. The New Mexico Tort Claims Act ("TCA") provides immunity to certain public employees, and set outs exceptions to that governmental immunity. Defendants argue that under the TCA, immunity has been provided to "governmental entit[ies] and public employee[s] acting within the scope of duty." *See* NMSA 1978 § 41-4-4(A). According to Defendants, if claims arise out of action that Defendants have been provided immunity for under the TCA, then the claims are out of this Court's subject matter jurisdiction. Defendants argue that the TCA has not provided any waiver for these types of common law claims being made by Plaintiff.

Plaintiff responds that sovereign immunity is limited in certain scenarios if there is an "affirmative link between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Gallagher v. Shelton*,

587 F.3d 1063, 1069 (10th Cir. 2009) (internal citations omitted). Any official who causes a citizen to be deprived of their constitutional rights can be held liable. *See Buck v. City of Albuquerque*, 549 F.3d 1269, 1279 (10th Cir. 2008). Further, they argue, that the fraudulent nature of the investigation that occurred in this case could raise an issue of personal liability. Citing *Vigil v. State Auditor's Office*, 2005-NMCA-096, 138 N.M. 63, 116 P.3d 854, Plaintiff claims that the theory of derivative liability can be applied under the TCA and is similar to *respondeat superior*.

The Court is not convinced by Plaintiff's argument. The TCA waives immunity for the "*negligence* of public employees while acting within the scope of their duties." *See* NMSA 1978, §§ 41-4-5 through 41-4-13 (emphasis added). These common law claims – conspiracy, defamation and slander, and retaliation – are *intentional* torts. *See Fogelson v. Wallace*, 2017-NMCA-089, 406 P.3d 1012; *Marchiondo v. Brown*, 1982-NMSC-076, 98 N.M. 394, 649 P.2d 462; *Lihosit v. I & W, Inc.*, 1996-NMCA-033, 121 N.M. 455, 913 P.2d 262. The TCA has not waived immunity for intentional torts committed by public employees, and therefore has not waived immunity for the common law claims Plaintiff is pursuing. *See Seeds v. Lucero*, 2005-NMCA-067, 137 N.M. 589, 113 P.3d 859 (holding that public employees are immune from civil conspiracy claims); *Salazar v. City of Albuquerque*, 776 F. Supp. 2d 1217 (D.N.M. 2011) (the TCA has not waived immunity for defamation); *Henning v. Rounds*, 2007-NMCA-139, 142 N.M. 803, 171 P.3d 317 (the TCA has not waived liability for retaliation, defamation, fraud and civil conspiracy).

Plaintiff argues that Defendants may still be held liable for these torts because if Plaintiff can prove that the investigation against her was illegal, then the Defendants cannot claim their conduct was in the course and scope of their employment. This Court has already dismissed Plaintiff's due process arguments, which means that she has not convinced this Court that the investigation against her or Apodaca was "illegal." Without Plaintiff's due process claims,

9

Plaintiff's reasoning falls short. Assuming the investigation was defamatory, for example, those actions were undertaken by Defendants within the scope of their employment and therefore they possess immunity for those actions. The alleged behavior of Defendants is consistent with behavior that other courts have found to be covered by immunity. *See Vigil*, 116 P.3d at 854 (finding that an auditor who may have violated state and federal law was still performing acts that he was "requested, required or authorized to perform" and therefore he was covered by TCA immunity); *Salazar*, 776 F. Supp. 2d at 1217 (city employees were immune from claims of defamation for defamatory statements made in the course of their employment); *Seeds*, 113 P.3d at 859 (motive of city defendants is irrelevant, even if malicious they were immune from civil conspiracy claims.) The New Mexico Supreme Court has held that the TCA is clearly intended to immunize public employees who abuse their office, even if that abuse results in tortious and illegal activity. *Celaya v. Hall*, 2004-NMSC-005, ¶ 25, 135 N.M. 115, 121, 85 P.3d 239, 245. An investigation into personnel, no matter how humiliating or baseless, fits under *Vigil's* standard of activities that Defendants were "requested, required or authorized to perform" as a part of their role as a public employee. Given these holdings, the Court holds that Defendants are immune from Plaintiff's common law and intentional tort claims.

### C. Defendant's motion to dismiss is granted with regards to Plaintiff's class of one equal protection argument.

Defendants argue that Plaintiff's class of one equal protection claim is not cognizable because class of one equal protection claims arising from public employment is not actionable. *See Loggins v. City of Albuquerque*, CIV 11-0195 KBM/DJS, 2011 WL 13284648 (D.N.M. Oct. 18, 2011). To survive under this theory, a plaintiff must prove that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The United States

Supreme Court has held that class of one claims are "simply a poor fit in the public employment context." *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 605 (2008).

Plaintiff argues her class of one equal protection claim does not fail. These sorts of claims are ones in which "government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner." *Kelley v. City of Albuquerque*, 542 F.3d 802, 821 (10th Cir. 2008) (internal citations omitted). The theory of class of one is supposed to protect against the "arbitrary and wholly irrational" actions of the state actor and therefore fits well with Plaintiff's claims that she was treated so poorly that it went far beyond a personnel decision. So, they argue, the normal equal protection comparison of one employee versus another is not at issue. At the hearing on Defendants' motion, Plaintiff called the Court's attention to *Henry v. New Mexico Activities Ass'n ex rel. Tripp*, No. CV 05-945 MCA/RLP, 2005 WL 8163674 (D.N.M. Sept. 14, 2005,) which she claims is an analogous case to her argument. In *Henry,* District Court Judge Christina Armijo ordered the New Mexico Activities Association to allow a student to participate in athletic activities while the parties litigated his potential class of one misclassification issues. *See Henry,* 2005 WL 8163674 at 19.

The Court agrees with Defendants that Plaintiffs claims are inconsistent with the theory of the class of one. Plaintiff argues that PED and its employees violated Ms. Vargas' dignity and humanity by making humiliating statements to her and by forcing her to participate in an investigation into her sex life. While this might be true, it does not overcome the Tenth Circuit and Supreme Court holdings which have found that equal protection class of one claims are not cognizable in the public employment context. *See Engquist*, 553 U.S. at 598 ("Our traditional view of the core concern of the Equal Protection Clause as a shield against arbitrary classifications, combined with unique considerations applicable when the government acts as employer as

11

opposed to sovereign, lead us to conclude that the class-of-one theory of equal protection does not apply in the public employment context."); *Kelley*, 542 F.3d at 813 ("more to the point, the [Supreme] Court recently held that 'the class-of-one theory of equal protection does not apply in the public employment context' … Given the Supreme Court's recent holding, we need not address Ms. Kelley's argument that she raised a genuine issue of fact by showing that she was the only non-department head attorney fired by Mr. Chavez and was the only attorney known to have had a case against him. Ms. Kelley's entire class-of-one claim is foreclosed by the Court's decision in *Engquist*."); *Pignanelli v. Pueblo Sch. Dist. No. 60*, 540 F.3d 1213, 1220 (10th Cir. 2008) ("[the Supreme Court] rejected the plaintiff's claim, unequivocally holding that the class-of-one equal protection theory, whatever its contours, "does not apply in the public employment context."). *Henry*, which Plaintiff claims justifies using the equal protection class of one doctrine in the public employment context, is not analogous. It is about a student who was blocked from engaging in athletic activities due to alleged punitive decisions made about the student's transfer status. *Henry*, 2005 WL 8163674 at 6. It does not justify the use of the class of one equal protection doctrine in the way Plaintiff is attempting to use it here.

### III. Conclusion

For the reasons set forth above, the Court grants Defendants' motion to dismiss with regards to Plaintiff's Title VII claims against Defendants in their individual capacity; her due process claims; her common law conspiracy, slander, defamation, and retaliation claims; and her equal protection claim. The Court denies Defendants' motion with regards to their argument that Plaintiff has failed to exhaust her administrative remedies and that she has not stated a claim for retaliatory discharge.

IT IS THEREFORE ORDERED that Defendants motion (**Doc. 20**) is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE